NOTICE

Decision filed 12/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220674-U

NO. 5-22-0674

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 21-CF-1339 |
| | ) | |
| AHMED ABDULLAH, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER[*] delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse and remand where the circuit court exceeded its authority in granting defendant's motion to dismiss by considering facts outside the charging instrument and making factual findings in ruling that section 40(e) of the Firearm Concealed Carry Act barred the charged offenses.

¶ 2    In August 2021, the State charged Ahmed Abdullah with two counts of aggravated unlawful use of a weapon pursuant to section 23-1.6(a)(1)(3)(A-5) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1.6(a)(1)(3)(A-5) (West 2020)). Subsequently, on June 30, 2022, defendant filed a motion to dismiss these charges pursuant to section 114-1(a)(8) of the Code of Criminal Procedure of 1963 (Procedural Code) (725 ILCS 5/114-1(a)(8) (West 2020)). A hearing

_____

[*]Justice Welch was originally assigned to the panel before his death. Justice Bollinger was later substituted on the panel and has read the Appellant's brief. No Appellee brief was filed and oral arguments were not requested.

1

was held on the motion, culminating in the circuit court's granting of the motion to dismiss. The State appealed this decision, contending that the circuit court erred in its ruling. For the following reasons, we reverse and remand.

¶ 3                               I. BACKGROUND

¶ 4     In August 2021 defendant was charged with two counts of aggravated unlawful use of a weapon under section 23-1.6(a)(1)(3)(A-5) of the Criminal Code (720 ILCS 5/24-1.6(a)(1)(3)(A-5) (West 2020)), alleging that on August 22, 2021, he carried two separate pistols—one 9-millimeter and the other .380 caliber—which were uncased, loaded, and immediately accessible in his vehicle. The charges further specified that the firearms were carried while not on his own land, nor within his residence or fixed place of business, and that he had not been issued a currently valid license under the Firearm Concealed Carry Act (CCA) (430 ILCS 66/1 (West 2020) *et seq.*). On June 30, 2022, defendant filed a motion to dismiss the charges pursuant to section 114-1(a)(8) of the Procedural Code (725 ILCS 5/114-1(a)(8) (West 2020)), contending that he was legally permitted to possess the firearms under the provisions of section 40(e) of the CCA (430 ILCS 66/40(e) (West 2020)), which permits non-Illinois residents to transport concealed firearms within a vehicle if the firearm remains in their vehicle, and they (1) are not prohibited federally from owning or possessing a firearm; (2) are eligible to carry in their home state, as evidenced by a license or permit from their state of residence "if applicable;" and (3) do not possess a concealed carry license in Illinois. *Id.*

¶ 5     On August 2, 2022, the circuit court held a hearing regarding defendant's motion. Defendant provided testimony in support of his motion, asserting that he was a resident of Missouri at the time he was charged and possessed a legally purchased firearm, specifically a 9-millimeter pistol, acquired from a licensed firearm retailer. Additionally, he stated that on August 21, 2021,

2

he was traveling through the State of Illinois in a Ford truck with his fiancée, en route to a vacation in Pigeon Forge, Tennessee. He carried his firearm with him in a bag containing his clothing and other belongings, which was stored in the back seat of the vehicle. His fiancée also possessed a firearm, a .380 caliber pistol, which was stored in her own bag within the vehicle. Defendant testified that, to his knowledge, his fiancée had also purchased her firearm legally.

¶ 6 While traveling on the highway within the State of Illinois, he was subjected to a traffic stop. Defendant testified that the officer conducting the stop indicated that he was speeding, yet he was not issued a traffic citation for such an infraction. Upon being pulled over, defendant stated that he informed the officer of the presence of unloaded firearms in the vehicle. The officers seized the firearms; however, they returned the bags, which incidentally contained ammunition clips for the firearms, to his fiancée.

¶ 7 The State posed a single inquiry during cross-examination: "You don't have a concealed carry license, right?" Defendant responded that he did not, as such a license was not mandated in Missouri.

¶ 8 Following defendant's testimony, the hearing immediately proceeded to oral argument. Defense counsel contended that defendant had satisfied the criteria outlined in section 40(e), which permitted him to travel within the State of Illinois with a concealed firearm. Consequently, it was argued that the charges against defendant should be dismissed. Specifically, regarding the second criterion under section 40(e), which requires that the individual be "eligible to carry a firearm in public under the laws of his or her state or territory of residence, as evidenced by the possession of a concealed carry license or permit issued by his or her state of residence, if applicable," defense counsel maintained that the requirement was fulfilled, as the State of Missouri did not mandate any form of concealed carry permit or license for carrying a concealed firearm.

¶ 9    Prior to the commencement of the State's argument, the circuit court informed counsel for the State that "I have X'd out the requirement that they have to show a permit or anything because it's not applicable in Missouri. So don't hang your hat on that." The State acknowledged the circuit court's position and then argued that, in looking at section 40(e), it must be read in conjunction with the rest of section 40 of the CCA (430 ILCS 66/40 (West 2020)), which, aside from subsection 40(e), primarily addresses nonresident license applications. Specifically, the State emphasized that, in issuing nonresident licenses, the Illinois State Police were authorized to accept applications only from those states that have "substantially similar" requirements concerning the ownership, possession, and carrying of firearms. When the circuit court indicated that it did not see the connection, noting that defendant in this matter was not applying for a nonresident license, the State pivoted, asserting that the second prong of section 40(e) similarly required that an individual must have been issued a concealed carry permit by a state with firearm laws substantially similar to those of Illinois, consistent with the earlier subsections of section 40 regarding reciprocal licensing. Consequently, defendant did not satisfy the criteria outlined in section 40(e).

¶ 10    The circuit court reaffirmed its stance that residents of Missouri are not obligated to possess a concealed carry permit in order to adhere to section 40(e). Subsequently, the circuit court inquired of defense counsel whether his client possessed any evidence indicating that the firearm had been obtained legally. Defendant stated that he still retained the receipt as proof.

¶ 11    The circuit court took the matter under advisement, granting defendant permission to submit proof of lawful purchase of the firearm, and subsequently adjourned the hearing. On August 25, 2022, defendant submitted a receipt evidencing the purchase of a Smith and Wesson 9-millimeter firearm[1]. On September 7, 2022, the circuit court issued a written order granting the

---

[1]Defendant did not submit proof of purchase of the .380 caliber firearm.

4

motion to dismiss. In its written order, the circuit court determined that prong two of section 40(e) did not necessitate that a concealed carry permit be issued to a defendant by a state with "substantially similar" firearm laws and that defendant fulfilled the criteria specified in section 40(e). On October 14, 2022, the State filed a notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, the State argues that the circuit court exceeded its authority in dismissing the charge under section 114-1 of the Procedural Code (725 ILCS 5/114-1 (West 2020)) by engaging in impermissible fact-finding. The State further argues that section 40(e) should be construed to require defendant to have a concealed carry permit issued by the State of Missouri.

¶ 14    Defendant filed no brief in this matter. "Under such circumstances, we may choose to address the merits of the appeal where the record is simple and the issues are such that the court can easily resolve them without the aid of an appellee's brief." *People v. Williams*, 339 Ill. App. 3d 956, 958 (2003).

¶ 15    The State contends, more specifically, that the circuit court impermissibly considered testimony which it subsequently relied upon in rendering factual findings for its basis for granting the motion to dismiss. The State asserts that, pursuant to section 114-1(a)(8), the circuit court was not authorized to evaluate the evidence but was instead required to confine its focus to the charging instrument, leaving the assessment of evidence to the trier of fact. For the reasons outlined below, we agree with the State.

¶ 16    Defendant filed a motion to dismiss pursuant to section 114-1(a)(8) of the Procedural Code. "A trial judge may dismiss criminal charges prior to trial only for the reasons set forth in section 114-1." *People v. Williams*, 223 Ill. App. 3d 692, 703 (1992). Section 114-1(a)(8) provides in pertinent part:

5

"(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

\* \* \*

(8) The charge does not state an offense." 725 ILCS 5/114-1(a)(8) (West 2020).

¶ 17    Defendant's motion to dismiss alleged that the "charge does not state a criminal offense of which the defendant can be charged." The motion cited pertinent facts of the case. It referenced sections of the CCA, specifically sections 10(h) and 40(e) (430 ILCS 66/10(h), 40(e) (West 2020)), asserting that these sections permit non-residents to transport firearms. Defendant concluded that "based upon Illinois Statutes the defendant was abiding by the laws of Illinois and there is no stated cause of action of which the defendant should be charged." It was this contention that was argued during the motion to dismiss hearing and which the circuit court relied upon in issuing its decision.

¶ 18    When a pretrial motion challenges the sufficiency of a charge, our standard of review is to determine whether the charge complies with section 111-3 of the Procedural Code (725 ILCS 5/111-3 (West 2020)), "which requires that the charge be in writing and state the name of the offense, the statutory provision allegedly violated, the name of the accused and the date and county of the offense, and set forth the nature and elements of the offense. If the charge meets these criteria, it should not be dismissed." *Williams*, 223 Ill. App. 3d at 703-04. "[W]hen addressing a defendant's motion to dismiss a charge under section 114-1(a)(8), a trial court is strictly limited to assessing the legal sufficiency of the indictment, information, or criminal complaint and may not evaluate the evidence the parties might present at trial." *People v. Soliday*, 313 Ill. App. 3d 338, 342 (2000).

6

¶ 19  In this instance, the circuit court received testimony from defendant concerning the traffic stop, the lawful purchase of his firearm in Missouri, and Missouri's legal requirement that he was not obligated to obtain a concealed carry permit. The circuit court further allowed defendant to submit additional evidence after the hearing to support his motion to dismiss. The State concedes that the prosecutor did not object to defendant's evidence submission, the circuit court's invitation to submit further evidence after the hearing, or the circuit court's consideration of such evidence in ruling on the motion to dismiss. "Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal." *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. However, the State urges us to consider the circuit court's consideration of extrinsic evidence under plain error review. "[I]t is within the discretion of the appellate court to review contentions not raised at trial by the State under the doctrine of plain error." *People v. Knop*, 199 Ill. App. 3d 944, 949 (1990). We may conduct plain error review where the circuit court's order "affects the substantial right of the People." *People v. Lucy*, 204 Ill. App. 3d 1019, 1033 (1990). See *People v. Oswald*, 106 Ill. App. 3d 645 (1982); *People v. Smith*, 42 Ill. App. 3d 731 (1976). "Invocation of the plain error doctrine may be warranted where, as here, the issue is truly one of law concerning the construction of a statute." *Knop*, 199 Ill. App. 3d at 949. We elect to apply the plain error doctrine here to examine the propriety of the circuit court's dismissal of the charges against defendant. *Id.* To do otherwise would effectively allow the parties, by proceeding without objection in an unauthorized proceeding, to improperly enlarge the authority of the circuit court. *Id.*

¶ 20  When a motion to dismiss is filed pursuant to section 114-1(a)(8), as in this matter, it asserts that the charging instrument did not allege an offense. Here, defendant was charged with two

counts via criminal information. The prerequisites for a properly filed charge are that it must be in writing,

"(1) [s]tating the name of the offense;

(2) [c]iting the statutory provision alleged to have been violated;

(3) [s]etting forth the nature and elements of the offense charged;

(4) [s]tating the date and county of the offense as definitely as can be done; and

(5) [s]tating the name of the accused, if known, and if not known, designate the accused by any name or description by which he can be identified with reasonable certainty." 725 ILCS 5/111-3 (West 2020).

¶ 21 Here, the information charged defendant with two counts, both of which were in writing and named the offense of aggravated unlawful use of a weapon. Both counts cited "Section 24-1.6(a)(1)(3)(A-5), Act 5.0, Chapter 720, ILCS, 2006," which states that a person commits the offense of aggravated unlawful possession of a weapon when he or she knowingly "[c]arries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm" and "the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act." 720 ILCS 5/24-1.6(a)(1)(3)(A-5) (West 2020). Both counts contained the elements of section 24-1.6, as the first count stated that defendant "knowingly carried in a vehicle a 9-millimeter pistol at a time when he was not on his own land, or in his own abode, or fixed place of business, which was uncased, loaded and immediately accessible, and the said defendant had

8

not been issued a currently valid license under the Firearm Concealed Carry Act." The second count stated that defendant "knowingly carried in a vehicle a .380 pistol at a time when he was not on his own land, or in his own abode, or fixed place of business, which was uncased, loaded and immediately accessible, and the said defendant had not been issued a currently valid license under the Firearm Concealed Carry Act." Each count listed the date of the offense as August 22, 2021, and named St. Clair County as the location of the offense. Finally, both counts named defendant in the charging paragraph. Comparing both counts to the requirements outlined in section 111-3 reveals that the charging information filed by the State strictly complied with the requirements of section 111-3.

¶ 22     However, rather than addressing the language of the charging information to assess its conformity with section 111-3, the circuit court listened to evidence relating to the events leading up to defendant's arrest. Furthermore, during closing arguments, defense counsel did not address whether the charging instrument was properly drafted. Instead, defense counsel concentrated on defendant's defense via the applicability of section 40(e) of the CCA. Defense counsel contended that defendant was entitled to carry a firearm in Missouri and thus complied with the provisions of section 40(e). He concluded "[a]nd so that we would ask that the case be dismissed because, by statute, he complied with all his requirements. And he's not required to have a firearm concealed carry card or a FOID card in the State of Illinois just for transporting a car through the State on his way on a trip." Additionally, the prosecutor also discussed the applicability of the CCA, prompting a discussion between both counsel and the circuit court regarding its application. The circuit court then stated:

> "We cannot expect our State Police to know everybody's—every state's laws, to be able to make that call on sight.

9

This is about the application, which is a process. If he were trying to apply, they may deny him because they may say, huh-uh, Missouri doesn't have any requirements. You just have to pass a federal background check. And that's not good enough for Illinois. So they might deny him a nonresident application, perhaps. I'm not even making a ruling on that. But that's what Paragraph (a) through (d) is talking about.

And (e), it looks like is a carved-out exception to say, now, listen, people can travel through and transport through the state, so long as they can have the weapon in their own state, whatever that state's requirements are. That's how I'm looking at it.

But again, I'm open. I'm just—throw whatever else you've got out that you think I need to consider.

So here's one thing. I need proof that he can carry. Like, where's the receipt? I need a gun receipt, the receipt for purchasing the gun, so that I know it was approved. And, of course, you know, you'll be allowed time to get that. So that we can see that he fits under Paragraphs (1), (2) and (3) of Paragraph (e), which I imagine he can get."

¶ 23 The parties and the circuit court engaged in ongoing discussions regarding the application of the CCA. None of the parties addressed the charging instrument or whether it satisfied all requirements of section 111-3 for a valid charge. Furthermore, the circuit court reserved its ruling pending defendant's submission of additional evidence demonstrating that he had lawfully purchased the firearm, which was submitted on August 22, 2022.

¶ 24 On September 16, 2022, the circuit court issued a written decision, granting the motion to dismiss. The order acknowledged that defendant was charged with two counts of aggravated unlawful use of a firearm. It indicated that it was undisputed that "(a) [t]he defendant is a resident of the State of MO[,] (b) [t]he State of Missouri does not require a license to conceal and carry a

10

firearm and the Defendant lawfully purchased and is permitted to carry in Missouri[, and] (3) [t]he [d]efendant was traveling through the State of Illinois when he was stopped by O'Fallon, IL police for speeding." The circuit court discussed the applicability of the CCA and provided an analysis thereof in relation to the facts of the case. It concluded that the statute under which defendant was charged "relates back" to the CCA and, accordingly, granted the motion to dismiss.

¶ 25    The analysis conducted by the circuit court, which led to the decision to grant the motion to dismiss, did not encompass any discussion concerning the correctness of the charging instrument. Instead, it addressed defendant's affirmative defense under section 40(e) against the charges. This was beyond its authority.

¶ 26    In *Soliday*, 313 Ill. App. 3d 338 (2000), the defendant's criminal charge was dismissed pursuant to section 114-1(a)(8). The State appealed, and the appellate court reversed. *Id.* at 339. The appellate court observed that at the hearing on the motion to dismiss, the defendant did not argue that the information failed to state an offense; rather, the defendant challenged the underlying facts of the case. *Id.* at 341-42. The court stated that "when addressing a defendant's motion to dismiss a charge under section 114-1(a)(8), a trial court is strictly limited to assessing the legal sufficiency of the indictment, information, or criminal complaint and may not evaluate the evidence the parties might present at trial." *Id.* at 342. It concluded that "neither a trial court nor an appellate court can evaluate the evidence that the parties might present at trial when determining whether dismissal under section 114-1(a)(8) of the Procedural Code is appropriate." *Id.* at 343.

¶ 27    The same analytical approach applies to this case. There was no justification for the circuit court to examine whether defendant lawfully acquired the firearm, whether he complied with the concealed carry regulations in the State of Missouri, or whether the facts permitted an application of the CCA section 40(e) exception to defendant's circumstances. The only matter for

consideration by the circuit court was whether the charging document properly alleged an offense as required by section 111-3 of the Procedural Code. The circuit court exceeded its authority by making factual findings and determining that defendant's affirmative defense was established when ruling on the motion to dismiss, as its consideration should have been limited solely to whether the information alleged the essential elements of an offense. See *People v. Knop*, 199 Ill. App. 3d 944 (1990); *People v. Romanik*, 2013 IL App (5th) 120213-U; *People v. Nordike*, 2021 IL App (5th) 190359-U. The responsibility of determining whether defendant satisfies all requirements of section 40(e) rests with the jury, not the circuit court, in its ruling on the motion to dismiss. See *People v. Tolbert*, 2016 IL 117846, ¶¶ 14-17 (observing that "[e]xceptions are generally mere matters of defense" that the defendant must raise and prove at trial) (Internal quotation marks omitted.).

¶ 28   Despite the information clearly alleging the elements of the charged offense, during its deliberations with counsel at the hearing and in its written order, the circuit court did not discuss the sufficiency of the charging information. Rather, the circuit court dismissed the case based on defendant's testimony and its interpretation of an affirmative defense. The circuit court exceeded its authority by considering extrinsic evidence in connection with a motion to dismiss filed pursuant to section 114-1(a)(8), thereby substantially affecting the rights of the State to prosecute defendant. We conclude that the actions of the circuit court constituted plain error, necessitating the reversal and remand of this matter for further proceedings.

¶ 29   Because we reverse and remand based on the circuit court exceeding its authority in ruling on the motion to dismiss, we find it unnecessary to address the remaining contentions argued by the State in its brief.

¶ 30 III. CONCLUSION

¶ 31 For the foregoing reasons we reverse and remand the dismissal of the circuit court of St. Clair County.

¶ 32 Reversed and remanded.